UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMANUEL CHRISTIAN PRICE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C&PR, et al.,<br><br>　　　　　Defendants. | No. 2:17-cv-0382 TLN KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　　Plaintiff is a state prisoner, who proceeds without counsel and in forma pauperis, in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on plaintiff's original complaint against defendants Wright and Champion. Presently pending is defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons that follow, the undersigned recommends that defendants be granted qualified immunity, and that this action be dismissed.

II. Plaintiff's Complaint

　　　Plaintiff alleges that he was diagnosed with T-Cell peripheral non-Hodgkin's lymphoma, and has been designated "high risk" and Cocci Area 1 and Area 2 restricted under CDCR policy. Despite such designation, on November 3, 2016, plaintiff was transferred from High Desert State Prison ("HDSP") to Mule Creek State Prison, by way of a lay-over at North Kern State Prison

("NKSP"), which is located in a hyperendemic area for coccidioidomycosis, also known as "Valley Fever." (ECF No. 1 at 4.) Plaintiff informed defendant Champion that he was designated high risk for Valley Fever, but defendant Champion insisted plaintiff get on the bus or receive a rules violation report. Plaintiff alleges that receiving and release RN M. Wright was also deliberately indifferent because she is required to review and document medical information prior to an inmate's transfer, and the transfer form reflects she documented plaintiff's lymphoma and noted his medical chronos, documenting the cocci area restrictions, were reviewed by her prior to plaintiff's transfer. Plaintiff also claims that defendant Wright was required to "immediately call the C&PR [Classification & Parole Representative] and advise of plaintiff's medical restriction and imminent transfer, and then inform the R&R [Receiving and Release] Sergeant of such information. Plaintiff states there is no evidence that defendant Wright did either of these duties. Plaintiff alleges that because of his lymphoma, being exposed to elevated levels of the cocci fungus (prevalent in the San Joaquin Valley), could induce serious illness, including death.

Plaintiff seeks money damages.

III. Legal Standards: Motion for Judgment on the Pleadings

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Id. Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" Chavez, 683 F.3d at 1108, quoting Brooks v. Dunlop Mfg. Inc., 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011).

"A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 556 U.S. at 678). In considering a motion for judgment on the pleadings the court accepts "all factual allegations in the complaint as true" and construes the allegations "in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009) (citing Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004)). Judgment on the pleadings is appropriate "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Fleming, 581 F.3d at 925 (citing Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 979 (9th Cir. 1999)).

If the motion for judgment on the pleadings is granted, leave to amend should be granted unless it is clear the complaint cannot be saved by amendment. Jackson v. Barnes, 749 F.3d 755, 766-67 (9th Cir. 2014) (district court erred in granting judgment on the pleadings and not permitting amendment where it was not absolutely clear the deficiencies were not curable).

IV. Eighth Amendment

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014); see also Farmer v. Brennan, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm). Deliberate indifference occurs when "[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 841. Thus, a prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 (1993).

"The second step, showing 'deliberate indifference,' involves a two part inquiry." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety."

Id. (quoting Farmer, 511 U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Thomas, 611 F.3d at 1150 (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (citing Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.") (footnote omitted).

V. Qualified Immunity

Under the qualified immunity doctrine, government officials acting in their official capacities are immunized from civil liability unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted). The qualified immunity analysis includes two prongs: (1) the facts must allege or show "a violation of a constitutional right"; and (2) the right must be "'clearly established' at the time of defendant's alleged misconduct." Id. (citations omitted). When engaging in qualified immunity analysis, district courts are required to consider the law at the time the plaintiff's injury occurred. Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001).

Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). "[P]laintiff bears the burden of proof that the right allegedly violated was clearly established." Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (citation omitted). If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his conduct was lawful. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).

The measuring rod for determining whether an official's conduct violates a plaintiff's constitutional right was set forth by the Supreme Court in Ashcroft v. al-Kidd, 131 S. Ct. 2075, 2083 (2011). "A Government official's conduct violates clearly established law when, at the time

4

of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted). As the Supreme Court explained:

> "We have repeatedly told courts . . . not to define clearly established law at a high level of generality." Al-Kidd, supra, at 742, 131 S. Ct. 2074. The dispositive question is "whether the violative nature of particular conduct is clearly established." Ibid. (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam) [citation omitted].

Mullenix v. Luna, 136 S. Ct. 305, 308 (2015). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (citations omitted).

VI. Discussion

    A. The Constitutional Right at Issue

Generally, prisoners have a constitutional right to safe conditions of confinement. Farmer, 511 U.S. at 825. But here, the undersigned does not need to determine the full contours of the Eighth Amendment in the Valley Fever context, or whether plaintiff has failed to state a cognizable claim under the Eighth Amendment. Rather, due to the unsettled case law concerning Valley Fever within this district, as discussed below, the undersigned finds that defendants are entitled to qualified immunity from plaintiff's Eighth Amendment claim. Thus, the undersigned turns to the second step of the qualified immunity analysis as permitted under Pearson, 555 U.S. at 239.

    B. Was the Law Clearly Established?

        1. The Parties' Arguments

Defendants contend that as of November 2016, the law regarding a prisoner's movement through a region where he could be exposed to Valley Fever was not clearly established. (ECF No. 30-1 at 1-2.) Specifically, as of November 2016, no Supreme Court or Ninth Circuit decision had addressed the point at which a prisoner's exposure to Valley Fever constitutes a substantial

5

risk of serious harm in violation of the Eight Amendment. (ECF No. 30-1 at 6.) Defendants rely on Williams v. Hill, No. 1:16-cv-00540, 2017 WL 1494610, at *7 (E.D. Cal. 2017) ("The Ninth Circuit has not yet spoken on the issue of whether allegations of exposure to, or contraction of, cocci can state an Eighth Amendment claim."); Cunningham v. Kramer, 178 F.Supp.3d 999, 1005 (E.D. Cal. 2016) ("The Court finds no Supreme Court or published Ninth Circuit case determining whether an inmate's environmental exposure to Valley Fever or other environmental organism would be a violation of the Eighth Amendment."). (ECF No. 36-1 at 7.)

Defendants then discuss three unpublished cases in which the Ninth Circuit reversed dismissals of prisoners' cases alleging exposure to Valley Fever violated the Eighth Amendment, but in two of those cases failed to discuss the merits or clarify what was needed to state an Eighth Amendment claim. (ECF No. 30-1 at 6-7, citing Lenoir Smith v. Schwarzenegger, 393 F. App'x 518 (9th Cir. 2010); Johnson v. Pleasant Valley State Prison, 505 F. App'x 631 (9th Cir. 2013).) In the third case, Holley, defendants argue that the Circuit "tends to confirm the conclusion that housing inmates within the endemic area does not violate the Eighth Amendment." Id. at 8, citing Holley v. Scott, 576 F. App'x 670 (9th Cir. 2014). In any event, defendants contend that reading these three unpublished cases together does "not constitute 'fair and clear warning' to defendants that allowing African-American or chronic care program inmates to remain in an area where cocci is endemic constitutes deliberate indifference." (ECF No. 30-1 at 7, quoting Williams, 2017 WL 1494610 at *7.) Because it was not clearly established in 2016 that even permanently housing an inmate at an institution within the San Joaquin Valley violated the Eighth Amendment, defendants argue that it cannot be said that plaintiff's alleged right not to be laid-over for one night at NKSP was clearly established. (ECF No. 30-1 at 8.)

Plaintiff counters that in Plata, the Northern District (California) "thoroughly addressed the issue of inmates suffering from the Valley Fever epidemic in the [CDCR]." (ECF No. 32 at 3, citing Plata v. Brown, 2013 WL 3200587 (N.D. Cal. June 24, 2013).) Plaintiff contends that the Cocci Exclusion Policy, adopted November 2007, and plaintiff's high risk designation identified therein, were put in place to prevent plaintiff's exposure to cocci because of his history of lymphoma. Moreover, in 2010, the Plata Receiver refined the 2007 Exclusion Policy, and created

a "Valley Fever List" to identify inmates housed at institutions within the Valley Fever hyperendemic area that need to be transferred out. (ECF No. 32 at 4.) In April of 2012, plaintiff claims the Receiver's Public Health and Quality Management Units released a report that examined cocci between 2006 and 2010, and noted that four institutions: Pleasant Valley State Prison ("PVSP"), Avenal State Prison ("ASP"), Wasco State Prison, and NKSP, had cocci rates higher than rates in the counties in which the prisons were located, and none showed a consistent decrease in rates. (Id.) Plaintiff was laid over and housed at NKSP, where cocci is elevated, and plaintiff argues that in Plata, the defendants admitted they were aware that Valley Fever presents a serious risk to inmate health. (ECF No. 32 at 5.) Plaintiff contends that Plata is "law of the case," and put all CDCR employees on notice of the seriousness of Valley Fever and the risks it poses to inmates like plaintiff who suffer from lymphoma. Further, plaintiff contends that the cases upon which defendants rely, Williams, Cunningham, Lenoir Smith, Johnson v. Pleasant Valley, and Holley, are distinguishable because none of the plaintiffs in those cases were protected by the Exclusion Policy. (ECF No. 32 at 6.)

Plaintiff argues that the fact that he was laid over and housed for only one night does not make a difference because he was still exposed to the risk of serious harm from cocci while housed at NKSP for one night. Plaintiff states he was not N-95 masked when exposed to the outside air at NKSP. Plaintiff argues that the policy prohibits plaintiff from being housed at any of the nine prisons located in the hyperendemic area, including Wasco State Prison and NKSP, and therefore defendants violated the policy by housing plaintiff at NKSP even for one night. (ECF No. 32 at 7.) Plaintiff points out that the court in Plata required CDCR to provide medical and nursing staff additional training on Valley Fever. Plaintiff discussed the policy that Mule Creek State Prison put in place, and argues that HDSP should have a similar procedure. (ECF No. 32 at 8.)

In reply, defendants argue, *inter alia*, that Plata does not demonstrate that the constitutional right in question was clearly established in November of 2016 for the following reasons: (1) the Plata order only addressed the implementation of a policy excluding certain inmates from PVSP and ASP, identified as having the most severe cocci problems, and has no

7

application to NKSP; (2) the Plata order does not address or find that a temporary layover of one night at a prison within the endemic region violates an inmate's Eighth Amendment rights, and thus would not put defendants on notice that allowing plaintiff's one night layover would be unlawful; (3) the Plata order does not constitute binding precedent or a "robust consensus of cases of persuasive authority," see Boyd v. Benton Cty., 374 F.3d 773, 781 (9th Cir. 2004)[1]; and (4) the June 24, 2013 order in Plata existed when the court determined that the right to be free from exposure to cocci was not clearly established. (ECF No. 33 at 3-4.) Although the Northern District cited the Plata order in Franklin v. Giurbino, 2017 WL 24862 (N.D. Cal. 2017), the court granted defendants qualified immunity. Id. at 1-2, *6.

Thus, defendants argue they are entitled to qualified immunity because no legal authority, including the Plata order, demonstrate that as of November 3, 2016, it was "beyond debate" that plaintiff had a right not to be transported through the San Joaquin Valley and laid-over for one night at NKSP.

2. Discussion

The law in this area remains unsettled. Most courts in this district have found defendants are entitled to qualified immunity because there is an absence of a clearly established right that would support a finding that any defendant had a sufficiently culpable state of mind. See, e.g., Franklin, 2017 WL 24862 at *1, Gregge v. Kate, 2015 WL 2448679 (E.D. Cal. May 20, 2015) at *10 (collecting cases). The most notable case is Corey Lamar Smith v. Schwarzenegger, 137 F.Supp.3d 1233 (E.D. Cal. Oct. 7, 2015), a consolidated class action, which is presently pending on appeal in the Ninth Circuit, No. 15-17155. In Corey Lamar Smith, the district court found defendants entitled to qualified immunity "because the applicable law remains unsettled and

---

[1] In Boyd, the Ninth Circuit explained that there is little guidance from the Supreme Court "as to where courts should look to determine whether a particular right was clearly established at the time of the injury," but that the Circuit begins "by looking to binding precedent." Id., 374 F.3d at 781. "If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." Id. But when there is no binding precedent, the Circuit "look[s] to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." Boyd, 374 F.3d at 781 (citations and internal quotations omitted).

8

unclear," despite prisoner allegations of individual susceptibility to contracting Valley Fever because of ethnicity, compromised immune systems or advanced age. Id., 137 F.Supp.3d at 1241. Accord Williams v. Hill, 2017 WL 1494610, at *7; Boyce v. Fox, 2017 WL 404589, at *12 (E.D. Cal. Jan. 30, 2017), adopted, 2017 WL 896337 (Mar. 7, 2017); Cunningham, 178 F.Supp.3d at 1005 ("The Court finds no Supreme Court or published Ninth Circuit case determining whether an inmate's environmental exposure to Valley Fever or other environmental organism would be a violation of the Eighth Amendment," and noting that defendants would be entitled to qualified immunity on a claim that defendants housed inmates in a prison located in an area endemic for Valley Fever).

On the other hand, a few courts have identified the constitutional right at issue in a more fact-specific context and allowed the inmate's Eighth Amendment claim to proceed. In Allen, an African-American prisoner was housed at PVSP but had not yet contracted Valley Fever. Allen v. Kramer, 2016 WL 4613360 (E.D. Cal. Aug. 17, 2016). The court evaluated the defendants' qualified immunity defense identifying the constitutional right as: "Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in plaintiff's situation or because plaintiff has a particular susceptibility to the hazard." Id. at *12. The court found that "the serious risk of Valley Fever to human health is uncontroverted," and denied dismissal on qualified immunity grounds. Id. See also Williams v. Biter, 2017 WL 431353 (E.D. Cal. Jan. 31, 2017) (adopting the reasoning of Allen, and finding that, where African-American inmate with hepatitis C alleged exposure to an environmental hazard posing an unreasonable risk of serious damage to his health, Valley Fever, and alleged defendants were aware of the risk yet did nothing to remedy it, defendants were not entitled to qualified immunity at that stage of the proceedings).

Another district judge declined to address the issue of qualified immunity at the pleading stage, noting that "a number of recent Ninth Circuit opinions have suggested [that] dismissal of these types of cases on qualified immunity grounds before defendants are required to file an answer is premature in a case where the prisoner had a history of chronic asthma and viral

hepatitis C, and contracted Valley Fever while housed at PVSP in 2010.  Shabazz v. Beard, 2017 WL 735759 (E.D. Cal. Feb. 23, 2017).

Because the law remains unsettled, the undersigned is persuaded that defendants are entitled to qualified immunity.  Here, although plaintiff has a history of lymphoma, he did not allege he contracted Valley Fever, and was only housed at NKSP for one night.  "[T]he Court should "not hold prison officials . . . to a higher standard of constitutional clairvoyance than the many federal judges who -- even today -- do not discern a clearly established constitutional right in similar Valley Fever cases."  Jimenez v. Rothchild, 2017 WL 4675625, at *2 (S.D. Cal. Oct. 18, 2017).  By November of 2016, it was not beyond debate that if you were an inmate susceptible to Valley Fever, there was a clearly established right not to be housed at NKSP, located in an area endemic for Valley Fever.  There was no published Supreme Court or Ninth Circuit case law that addressed whether an inmate's exposure to Valley Fever would be a violation of the Eighth Amendment.  Moreover, no consensus among district courts has developed despite the substantial litigation in this district.  "The law here is underdeveloped and contradictory, and no 'consensus of cases of persuasive authority' exists such that a reasonable officer could" believe the alleged conduct was unlawful.  Williams v. Hill, 2017 WL 1494610, at *7, quoting Wilson v. Layne, 526 U.S. 603, 617 (1999).  Therefore, the undersigned recommends that defendants be granted qualified immunity.[2]

Further, it appears that most, if not all, of the litigation to date addresses the permanent housing of inmates in prisons located within the area endemic for Valley Fever.  Indeed, the policy described in Plata, and upon which plaintiff relies, is based on the permanent housing of inmates at such prisons, and does not address temporary layovers or temporary housing during transfers to other prisons for permanent housing.  Here, plaintiff's deliberate indifference claim is based on a temporary housing at NKSP for only one night.  Because it is unclear that the permanent housing of an inmate susceptible to Valley Fever in such an endemic area is a clear

---

[2] The recommendation that defendants be granted qualified immunity obviates the need to address the alternative argument that plaintiff's complaint be dismissed for failure to state a claim for relief.

violation of the Eighth Amendment, this court cannot find that temporarily housing plaintiff in such endemic area is a clear violation of the Eighth Amendment. Thus, granting qualified immunity at the pleading stage is appropriate under the circumstances of this action.

Finally, to the extent plaintiff relies on Plata to demonstrate defendant is not entitled to qualified immunity, such effort is unavailing. First, Plata is not "law of the case" in this action. The Supreme Court defines "law of the case" as a doctrine which "posits that a decision should continue to govern the same issues in subsequent stages *in the same case*." See Arizona v. California, 460 U.S. 605, 618 (1983) (emphasis added). Because the order in Plata was not entered in the instant action, such order is not law of the case.

Second, the order in Plata does not establish an Eighth Amendment right not to be exposed to Valley Fever. In Corey Lamar Smith, the court explained that:

> The Plata court only considered the effects of Valley Fever on inmates and did not address whether housing inmates in the San Joaquin Valley where they are exposed to Valley Fever would violate the Eighth Amendment. Further, while a state may adopt a policy which is more generous than what the Constitution requires, United States v. Heffner, 420 F.2d 809, 812 (4th Cir. 1969), the policy itself does not establish that environmental exposure to Valley Fever violates the Eighth Amendment.

Corey Lamar Smith, 2015 WL 2414743 at *21. The court concluded that "it is not beyond debate whether housing inmates in prisons in areas endemic for Valley Fever, a naturally occurring soil-borne fungus which can lead to serious illness, would violate their rights under the Eighth Amendment." Id. at *23. As noted by defendants, Plata is also cited in Franklin,[3] but the court granted the defendants qualified immunity "because it was not 'beyond debate' that there was a clearly established right . . . not to be housed in . . . areas with a prevalence of Valley Fever spores." Id., 2017 WL 24862, **1, 6. Finally, as noted above, the policy described in Plata addressed the permanent housing of inmates at prisons located within the San Joaquin Valley. In connection with inmates identified as susceptible to Valley Fever, the policy did not address

---

[3] In Franklin, the prisoner alleged that despite his high risk medical hold prohibiting such transfer, he was transferred to, and housed in, two different prisons located in an area endemic for Valley Fever. Id. at *2.

11

transfers of such inmates through the San Joaquin Valley, and did not address the temporary housing of inmates at prisons located within the area endemic for Valley Fever. Thus, plaintiff's reliance on Plata is unavailing.

VII. Leave to Amend

Generally, prisoners proceeding without counsel are entitled to an opportunity to amend to rectify any pleading deficiency unless it appears from the complaint that the deficiency cannot be corrected through an amended complaint. James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000). Because defendants are entitled to qualified immunity, amendment would be futile as to plaintiff's claim that his brief layover at NKSP violated the Eighth Amendment. Therefore, plaintiff should not be granted leave to file an amended complaint.

VIII. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for judgment on the pleadings (ECF No. 30) be granted; and

2. This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 26, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/pric0382.jop